OPINION OF THE COURT
Timothy J. Drury, J.
David J. DiPietro submitted a petition for the independent nomination for the Tea Party for the office of the New York State Senate for the 59th District. Three thousand valid signatures were required by statute to qualify to be on the ballot. The New York State Board of Elections (the Board) first found that, of the 4,675 signatures submitted, 2,098 were invalid, leaving a total of 2,577 valid signatures. Therefore, it determined that the petition was 423 signatures short of the statutory requirement. It then recomputed the numbers involved from the original staff worksheets and the figures on the summary tally sheets. It has now determined that there were 2,350 invalid signatures, leaving a total of 2,325 valid signatures. It has determined that the petition is short 675 signatures from the 3,000 signatures required. It has stated that it has not reexamined the signatures in any way, but has merely re-added the numbers set forth on the work and tally sheets.
Mr. DiPietro has challenged the Board’s actions in voiding his nominating petitions pursuant to Election Law § 16-102.
The Board invalidated over 400 signatures because the witnesses had previously signed a designating petition for the same office. The petitioner has argued that, in removing the requirement that a witness be also “qualified to sign the petition” (Election Law § 6-140 [2]) in 2009, the Legislature also removed the requirement that the witness not have previously signed a designating petition for the same office (see Matter of Sinagra v Hogan, 97 AD2d 643 [1983], affd 60 NY2d 811 [1983]). However, the Senate Introducer’s memorandum in support, the memorandum of the Board’s General Counsel, and the Division of *451 Budget memorandum all state that the purpose of the change was to remove the requirement that the witness be a resident of the political subdivision for which the petition was being circulated, which had been declared unconstitutional by two courts and was no longer being enforced by the Board.
The petitioner has responded that the memoranda stated that the purpose of the bill was to remove all requirements for a witness other than being a qualified voter in the state.
The respondents have also argued that the Legislature did not amend Election Law § 6-140 (2), which provides that “in lieu of the signed statement of a witness who is a duly qualified voter of the state qualified to sign the petition” (emphasis supplied), a statement signed by a notary public or commissioner of deeds is to be used. They have also pointed out that the Legislature did not repeal the provisions of Election Law § 6-138 (1), which disqualifies the signature of a person who had previously signed another designating or nominating petition. The respondents have argued that if the Legislature had intended to remove the bar to witnesses who had previously signed petitions, it would have eliminated these two provisions as well.
Finally, the respondents have argued that Election Law § 6-138 (1) refers to signers whose names “appear[ ]” upon another valid petition. They have argued that the term “appears” has been interpreted by the Sinagra case as referring to witnesses as well as signers of petitions. The respondents have also argued based on Election Law § 6-138 (2), which states that the rules for nominating petitions shall conform to the rules for designating petitions. Their argument, apparently, is that witnesses to designating petitions may not have signed earlier, valid petitions.
The effect of removing the phrase “who also is qualified to sign the petition” from section 6-140 (1) (b) is to remove the only basis for the requirement that a witness not have signed an earlier, valid petition. There are contrary arguments that can be made from other portions of the Election Law. However, “where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76). It is clear that the only requirement now for a witness to a nominating petition is to be a duly qualified voter of the state. To require more is to attempt to regraft requirements from a phrase that is no longer part of *452 the applicable statute. There are anomalies in the statute, but to continue a restriction without a basis would do violence to the plain meaning of the statute. The court does not agree with the respondents’ reading of the Sinagra case nor its interpretation of the rules governing designating petitions.
Therefore, the court restores 450 net signatures to the petitioner’s total (the number being stipulated to by all parties).
The petitioner has argued that the application of the law barring prior signers as witnesses works an unconstitutional deprivation of his rights. However, the court need not decide that issue given the above determination.
The signatures witnessed by Dorothy and Clarence Clark were voided because the address given on their sheets was different from the address in the voting records. They lived in the same house, but the county had changed the address to facilitate 911 responses. Actually, their residence now has two addresses. The Clarks still receive mail from the Wyoming County Board of Elections at their new address. This is not a case where a witness had moved. Therefore, they had provided the correct address of their residence on the nominating petition and the signatures they witnessed should not have been stricken. The instant situation is similar to the anomalous situation in Matter of Curley v Zacek (22 AD3d 954 [2005]). Accordingly, the net number of signatures to be restored is 333 (per the stipulation of the parties to that number).
Graham Johnson had married and moved into his new address after his wedding in late November of 2009. He witnessed the signatures at issue in mid-August 2010 and used his new address, which was different from his old address. He was not “in the process of moving from one address to another during the signature-gathering period” and the concerns voiced by the courts of the “rapid and efficient verification of signatures within the restrictive time periods imposed by the Election Law” and “facilitating the discovery of fraud” were raised by the discrepancy in his addresses (Curley v Zacek at 956 and at 956 n 2). The court correctly struck 127 signatures from the petitioner’s total (again per the stipulation of the parties to that number).
Sandra Barile witnessed signatures and set forth her address as the Village of Depew rather than the Town of Cheektowaga. However, her residential address is listed as Depew in the Board’s own records. Therefore, the 25 signatures she witnessed were incorrectly struck. Since 10 of these would have been *453 voided in a line-by-line review, 15 signatures are restored to the petitioner’s count.
Kayla Pimpo signed as a witness and the 90 signatures she witnessed were voided on the ground that she listed an incorrect address. Seventy-six of her signatures would have been voided in a line-by-line analysis, chiefly because the signer did not reside in the 59th District. The address she listed conformed with the address in the Board’s records and, additionally, she indicated on the sheets that she resided in the Town of Aurora. Therefore, 14 signatures are restored to the petition’s number.
Mary Jo Hopkins witnessed 25 signatures and listed her address as her mailing address of Varysburg rather than the Town of Orangeville. The Board’s records included her mailing address, but the signatures were voided since the witness was required to supply the town or city of her residence. Since the Board’s records listed the address Ms. Hopkins gave, the court will restore the signatures she witnessed to the petitioner’s total. Since nine of the signatures should have been voided in a line-by-line analysis, the net number of signatures restored is 16.
Andrew A. Marek also signed as a witness, but did so after the signature of another was crossed out. The Board voided the 25 signatures he witnessed on the ground that he failed to initial the alteration on the signature line. However, his signature underneath the crossed-out signature amounts to the same thing and the net signatures of 17 will be added to the petitioner’s total.
The court accords the presumption of regularity to the Board’s line-by-line and other analysis of the petition in question. The court has checked the Board’s computations and has determined that the number of invalid signatures after the Board’s review is 2,349.
The court has restored the following number of signatures:
Voided for signing prior petitions: 450
Clarks 333
Sandra Barile 15
Kayla Pimpo 14
Mary Jo Hopkins 16
Andrew A. Marek 17
TOTAL 845
*454 Accordingly, since:
Total valid signatures: 2,326
Plus restored signatures 845
3,171
exceeds the statutory number of required signatures, the Board is directed to restore the petitioner to the ballot for the office he seeks.